**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**
**CIVIL ACTION NO. _____**
*Electronically Filed*

**TYLER HARRIS and PABLO MATA,**
on behalf of themselves and all others
similarly situated                                                                                                  **PLAINTIFFS**

v.

**B&L DELIVERY LLC**

*Serve via Certified Mail*
Bob Maynard
Registered Agent for Service of Process
7068 Arbor Meadow Way
Versailles, Kentucky 40383

and

**BOB MAYNARD**                                                                                                     **DEFENDANTS**

*Serve via Certified Mail*
Bob Maynard
7068 Arbor Meadow Way
Versailles, Kentucky 40383

---

**COLLECTIVE-ACTION AND CLASS-ACTION COMPLAINT**

---

Plaintiffs Tyler Harris and Pablo Mata, on behalf of themselves and all others similarly situated, submit this Collective-Action and Class-Action Complaint against Defendants B&L Delivery LLC and Bob Maynard.

**Introduction**

1. Harris and Mata, on behalf of themselves and all others similarly situated, bring this action against their former employers, B&L Delivery LLC and its owner, Bob Maynard, to redress violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. and the Kentucky Wages

and Hours Act, KRS Chapter 337. Defendants' violations of both statutes have deprived Harris and Mata, as well as all other similarly-situated current and former employees, of wages to which they are entitled by law.

2. Harris, Mata, and the putative collective and class were forced or otherwise required to work "off the clock" during work weeks without receiving compensation for all time they spent working. For instance, pursuant to a common plan and practice, Defendants manipulated Harris, Mata, the collective, and the class' time cards to reflect meal breaks that were not or could not be taken, depriving them of wages for time spent working. Defendants also failed to compensate Harris, Mata, the collective, and the class for all overtime hours worked in excess of 40 hours in any work week.

3. This action is brought to recover unpaid wages owed to Harris, Mata, the collective, and the class.

**Parties, Jurisdiction, and Venue**

4. Harris is, and at all times relevant to this action was, a citizen and resident of Mt. Sterling, Montgomery County, Kentucky.

5. Mata is, and at all times relevant to this action was, a citizen and resident of Lexington, Fayette County, Kentucky.

6. B&L Delivery is, and at all times relevant to this action was, a limited liability company organized under the laws of the Commonwealth of Kentucky. B&L Delivery conducts, and at all times relevant to this action conducted, business in the Commonwealth of Kentucky, including in Fayette County, Kentucky. B&L Delivery may be served via its registered agent for service of process, Bob Maynard, at 7068 Arbor Meadow Way, Versailles, Kentucky 40383.

7. Defendant Bob Maynard is, and at all times relevant to this action was, a citizen and resident of Versailles, Woodford County, Kentucky, and the owner and sole member of B&L Delivery. Maynard may be served with process at 7068 Arbor Meadow Way, Versailles, Kentucky 40383.

8. Harris and Mata's claims for unpaid wages are brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kentucky Wages and Hours Act, KRS Chapter 337. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367.

9. The United States District Court for the Eastern District of Kentucky, Central Division at Lexington, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(a)(2)(B).

## Facts

10. B&L Delivery operates a carrier and logistics business. It contracts with Amazon, or one or more of its subsidiaries, to deliver packages to consumers who purchased goods on Amazon.com. B&L Delivery employs drivers and other employees to deliver these packages.

11. Defendants are, and at all times relevant to this action were, an enterprise engaged in interstate commerce, or in the production of goods for commerce and interstate commerce, as defined by the Fair Labor Standards Act, 29 U.S.C. § 203(s)(1), with annual revenue in excess of $500,000.00.

12. Defendants employed Harris, Mata, members of the putative collective, and members of the proposed class, and were responsible for establishing and administering pay and overtime pay rates, for establishing employee duties, for setting employee performance expectations, and for evaluating employee performance.

13. Harris is a former employee of Defendants. He was hired on or around March 24, 2019, and terminated on November 20, 2019.

14. When Harris was hired, and until late May 2019, he held a position in maintenance. In this role, Harris performed maintenance and mechanic services on the vehicles that Defendants provided to their drivers to deliver packages. Harris also worked as a driver, delivering packages when necessary. During this time, Harris was paid $16.00 per hour.

15. In late May 2019, Harris was promoted to Assistant Site Manager. In this role, and until his termination on November 20, 2019, Harris was paid an annual salary of $35,100.00.

16. During his time in maintenance and as a driver, Harris was scheduled to work from 9:00 a.m. to 5:00 p.m.

17. During his time in maintenance and as a driver, Harris regularly began working, with Defendants' knowledge, before 9:00 a.m., off-the-clock work for which he was not paid despite Defendants' knowledge.

18. During his time in maintenance and as a driver, Harris regularly was called upon in the evenings, after his work shift had ended, to respond to vehicle maintenance issues. On these occasions, Harris would leave his home, drive to the location where the vehicle had broken down or otherwise needed maintenance, perform the required maintenance, and then return home—off-the-clock work for which he was not paid despite Defendants' knowledge. Harris estimates that he performed this type of work several times each week.

19. During his time in maintenance and as a driver, Defendants docked 30 minutes from Harris's time each day for a meal break, whether Harris took a meal break or not. Harris estimates that, during his entire employment with Defendants, he received one 30-minute meal break.

20. As a result of the off-the-clock work that Harris provided, with Defendants' knowledge, Harris has been denied wages for time spent working, including overtime wages in those work weeks when the total number of hours worked exceeded 40 hours.

21. Mata is a former employee of Defendants. He was hired on or about August 4, 2019, and he resigned his employment on or around January 14, 2020.

22. Mata was employed as a driver and was paid an hourly wage that ranged during his employment from $12.00 per hour to $15.00 per hour.

23. Defendants released a work schedule for each work week, assigning drivers to one of two roles for each shift: either a route driver or a stand-by driver. All drivers begin their shift at 8:00 a.m. For drivers assigned a route, they first clocked-in for their shift, picked up the keys to the delivery van they were assigned and a phone, and loaded the packages to be delivered. Drivers with a route were required to return to the terminal, on Newtown Pike in Lexington, Kentucky, no later than 6:30 p.m. Drivers placed on stand-by were not given a route; instead, they helped load packages on delivery vans and would be assigned a route if another driver who was assigned a route called in sick or otherwise was unable to work that day. Stand-by drivers, if not assigned a route, were dismissed after approximately two hours of work.

24. When a driver returned to the terminal in the evening, he or she first required to return all undelivered packages to Amazon, which had a station located at the terminal; then to turn in the keys and phone to Defendants; and then to clock out.

25. As a driver, Mata clocked in at 8:00 a.m. and, on days he was assigned a route, clocked out when he finished his route later that day.

26. The vans and phones provided by Defendants to Mata, and all other drivers, were equipped with GPS tracking equipment, meaning that Defendants knew where each of their drivers were located at all times during the day. If a driver fell behind on the route, a data-determined metric, he or she could expect a call from Defendants to inquire about their status and the reason for falling behind.

27. Drivers who regularly fell behind on their route, even for reasons beyond their control, and drivers who did not return to the terminal by 6:30 p.m., even for reasons beyond their control, were written-up or disciplined and risked losing hours and shifts on future schedules.

28. Defendants also required drivers to fill-up their vehicles with gas before returning to the terminal each day, but drivers were only permitted to do so at authorized gas stations, even when such gas stations were "out of the way" or not easily accessible.

29. Given the pressure to complete a route on each shift in the time prescribed by Defendants, Mata was, and other drivers are or were, incentivized if not wholly required to skip meal breaks. Mata estimates that, during his employment, he took no more than four 30-minute meal breaks. Taking breaks on each shift compromised his ability to remain on schedule and finish on time, and in turn compromised his ability to continuing receiving regular shifts.

30. Defendants, however, docked 30 minutes from Mata's time each day for a meal break, whether Mata took a meal break or not.

31. Defendants, however, docked 30 minutes from the collective and the class' time each day for a meal break, whether each member of the class or collective took a meal break or not.

32. Defendants informed Mata, and all other drivers, that they were to take their meal breaks because 30 minutes of time was being deducted regardless of whether a break was taken or not.

33. As a result of Mata's off-the-clock work, for working during times that Defendants deducted as a break even though a break was not taken, Mata has been denied wages for time spent working, including overtime wages in those work weeks when the total number of hours worked exceeded 40 hours.

34. As a result of their off-the-clock work, for working during times that Defendants deducted as a break even though a break was not taken, the members of the collective and the class were denied wages for time spent working, including overtime wages in those work weeks when the total number of hours worked exceeded 40 hours.

### Collective-Action Allegations

35. Harris and Mata bring this action, in part, pursuant to 29 U.S.C. § 216(b) on behalf of themselves and a collective of other persons similarly situated to recover unpaid wages for time spent working off the clock that resulted in unpaid overtime wages in violation of 29 U.S.C. § 207, defined as follows:

> All current and former employees of Defendants B&L Delivery LLC and Bob Maynard, who are or were paid on an hourly basis during the applicable limitations period.

36. Questions of law and fact common among Harris, Mata, and the collective include, but are not limited to, the following:

    A. whether Defendants were aware that Harris, Mata, and members of the collective worked "off the clock;"

B. whether Defendants maintained a uniform policy, custom, plan, or practice of docking their employees' pay by 30 minutes on each shift worked for a meal break, whether each employee received a meal break or not;

C. whether Harris, Mata, and members of the collective had time docked from their pay for meal breaks that they did not receive or take;

D. whether Harris, Mata, and members of the collective were denied payment of overtime wages for all hours worked in excess of 40 in any given work week; and

E. whether Defendants' failure to pay Harris, Mata, and members of the collective for all time spent working was willful within the meaning of the Fair Labor Standards Act.

37. There are numerous current and former employees of Defendants, similarly situated to Harris or Mata, who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of a Court-approved or Court-supervised notice of this collective action and the opportunity to join this collective action pursuant to 29 U.S.C. § 216(b).

38. Harris, Mata, and the collective are similarly situated, as that term is used in 29 U.S.C. § 216(b), because each of them worked pursuant to Defendants' previously-described common pay practices and, as a result of such practices, were not paid the full and legally-mandated overtime wages to which they were entitled.

39. Harris and Mata will fairly and adequately represent and protect the interests of the collective.

40.     Harris and Mata have retained competent counsel experienced with labor-and-employment matters, with matters arising under the Fair Labor Standards Act, and with class- and collective-action litigation. Indeed, undersigned counsel has both successfully prosecuted and defended wage-and-hour class actions and has successfully defended multiple class-action matters.

41.     The names and addresses of the members of the collective are readily available from Defendants through records that normally are or should be maintained during the ordinary course of business.

42.     Harris and Mata reserve the right to redefine the collective prior to notice or certification and thereafter as may be warranted or necessary.

## Class-Action Allegations

43.     Harris and Mata bring this action, in part, pursuant to the Kentucky Wages and Hours Act, KRS Chapter 337 and Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of other persons similarly situated to recover unpaid wages for time spent working off the clock that resulted in Defendants failing to pay them their agreed-upon wages in violation of KRS § 337.060, defined as follows:

> All current and former employees of Defendants B&L Delivery LLC and Bob Maynard, who are or were paid on an hourly basis during the applicable limitations period.

44.     Members of the class are easily ascertainable, as their names and addresses are readily available from Defendants through records that normally are or should be maintained during the ordinary course of business.


45. The class is so numerous that joinder of all members is neither feasible nor practicable. While the precise number of class members has yet to be determined, Harris and Mata reasonably believe that more than forty individuals are currently employed or were formerly employed by Defendants within the applicable limitations period.

46. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. These questions of law and fact include, but are not limited to:

    A. whether Defendants were aware that Harris, Mata, and members of the class worked "off the clock;"

    B. whether Defendants maintained a uniform policy, custom, plan, or practice of docking their employees' pay by 30 minutes on each shift worked for a meal break, whether each employee received a meal break or not;

    C. whether Harris, Mata, and members of the class had time docked from their pay for meal breaks that they did not receive or take;

    D. whether Harris, Mata, and members of the class were denied payment of wages for all hours worked in any given work week; and

    D. whether Defendants' failure to pay Harris, Mata, and members of the class for all time spent working was willful within the meaning of the Kentucky Wages and Hours Act.

47. Harris and Mata's claims are typical of the class, and they possess the same interest and have suffered the same injury as the members of the class: they worked off the clock with Defendants' knowledge and were not compensated for all such time spent working, including, but not limited to, having time deducted for meal breaks that they did not or could not take.

48. Harris and Mata will fairly and adequately represent and protect the best interests of the class. None of their interests conflict with the interests of the class, and Harris and Mata will vigilantly prosecute both their claims and the class's claims.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all of the class members is impracticable and the potential recovery on an individualized basis is modest. Furthermore, adjudication of this action through a class action will avoid the possibility of inconsistent and potentially conflicting individual adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action.

50. Harris and Mata have retained competent counsel experienced with labor-and-employment matters, with matters arising under the Fair Labor Standards Act, and with class- and collective-action litigation. Counsel will commit and devote the necessary time and resources to zealously representing Harris, Mata, and the class.

### Count I:
### Violation of the Fair Labor Standards Act, 29 U.S.C. § 207

51. 29 U.S.C. § 207 provides that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

52. Harris and Mata were both an "employee" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

53. B&L Delivery and Maynard are both an "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

54. During his employment, Harris spent time working for which he was not paid, including time spent in the morning before he was clocked in for his shift, time spent in the evening after he had clocked out for his shift, and time spent working during the workday when Defendants had clocked him out for a break he did not or could not take.

55. As a result of and including such time during each work week, Harris worked in excess of 40 hours but was not paid overtime wages for all such time.

56. During his employment, Mata spent time working for which he was not paid, including time spent working during the workday when Defendants had clocked him out for a break he did not or could not take.

57. As a result of such time during each work week, Mata worked in excess of 40 hours but was not paid overtime wages for all such time.

58. During their employment, members of the collective, both current and former employees of Defendants paid on an hourly basis, spent time working for which they were not paid, including time spent in the morning before they were clocked in for their shift, time spent in the evening after they had clocked out for their shift, and/or time spent working during the workday when Defendants had clocked them out for a break they did not or could not take.

59. As a result of and including such time during each work week, individual members of the collective worked in excess of 40 hours but were not paid overtime wages for all such time.

60. By failing to pay Harris, Mata, and the collective appropriate wages for all time spent working, including overtimes wages, Defendants have willfully, knowingly, intentionally, or recklessly violated the FLSA.

61. As a result of Defendants' violations and unlawful acts, Harris, Mata, and the collective have suffered damages, including, but not limited to, unpaid overtime wages in an amount to be determined at trial. Harris, Mata, and the collective are also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

### Count II:
### Violation of the Kentucky Wages and Hours Act, KRS § 337.285

62. KRS § 337.285 provides that "[n]o employer shall employer any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forth (40) hours in a work week at a rate of not less than one and one half (1-1/2) times the hourly wage rate at which he is employed."

63. Harris and Mata may sue for violation of KRS § 337.285 through KRS § 337.385.

64. Harris and Mata were both an "employee" as defined by the Wages and Hours Act. KRS § 337.010(1)(e).

65. B&L Delivery and Maynard were both an "employer" as defined by the Wages and Hours Act. KRS § 337.010(1)(d).

66. During his employment, Harris spent time working for which he was not paid, including time spent in the morning before he was clocked in for his shift, time spent in the evening after he had clocked out for his shift, and/or time spent working during the workday when Defendants had clocked him out for a break he did not or could not take.

67. As a result of and including such time during each work week, Harris worked in excess of 40 hours but was not paid overtime wages for all such time.

68. During his employment, Mata spent time working for which he was not paid, including time spent working during the workday when Defendants had clocked him out for a break he did not or could not take.

69. As a result of such time during each work week, Mata worked in excess of 40 hours but was not paid overtime wages for all such time.

70. During their employment, members of the class, both current and former employees of Defendants paid on an hourly basis, spent time working for which they were not paid, including time spent in the morning before they were clocked in for their shift, time spent in the evening after they had clocked out for their shift, and/or time spent working during the workday when Defendants had clocked them out for a break they did not or could not take.

71. As a result of and including such time during each work week, individual members of the class worked in excess of 40 hours but were not paid overtime wages for all such time.

72. Defendants' failure to pay Harris, Mata, and the class overtime wages was not in good faith, and Defendants had no reasonable grounds for believing that their actions did not violate state law.

73. As a result of Defendants' violations and unlawful acts, Harris, Mata, and the class have suffered damages, including, but not limited to, unpaid overtime wages in an amount to be determined at trial. They are also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

## Count III:
## Violation of the Kentucky Wages and Hours Act, KRS § 337.060

74. KRS § 337.060 provides that "no employer shall withhold from any employee any part of the wage agreed upon."

75. Harris and Mata may sue for violations of KRS § 337.060 through KRS § 337.385.

76. Harris and Mata were both an "employee" as defined by the Wages and Hours Act. KRS § 337.010(1)(e).

77. B&L Delivery and Maynard were both an "employer" as defined by the Wages and Hours Act. KRS § 337.010(1)(d).

78. During their employment, Harris and Mata regularly were unable to take meal breaks. As a result, they did not clock out, for 30 minutes or any other reasonable period, to take a break from their duties.

79. During their employment, individual members of the class, both current and former employees of Defendants paid on an hourly basis, likewise were unable to take meal breaks. As a result, they did not clock out, for 30 minutes or any other reasonable period, to take a break from their duties.

80. Nevertheless, Defendants, pursuant to a common policy, custom, plan, or practice, regularly manipulated Harris, Mata, and the class's timecards to deduct 30 minutes of time to reflect breaks that were not actually taken.

81. By deducting time from Harris, Mata, and the class's timecards, and thus wages from their paychecks, Defendants have withheld the agreed-upon wages owed to Harris, Mata, and the class.

82. Defendants' failure to pay Harris, Mata, and the class their agreed-upon wages was not in good faith, and Defendants had no reasonable grounds for believing that their actions did not violate Kentucky law.

83. As a result of Defendants' violations and unlawful acts, Harris, Mata, and the class have suffered damages, including, but not limited to, unpaid wages in an amount to be determined at trial. Harris, Mata, and the class are also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiffs Tyler Harris and Pablo Mata, on behalf of themselves and all others similarly situated, either as a collective under 29 U.S.C. § 216(b) or as a class under Rule 23 of the Federal Rules of Civil Procedure, respectfully demand as follows:

A. for a trial by jury;

B. for judgment against Defendants on all claims asserted in this Complaint;

C. for designation of this action as a collective action on behalf of the proposed collective;

D. for designation of Harris and Mata as the collective's named representatives;

E. for designation of undersigned counsel as the collective's counsel;

F. for issuance, at the earliest possible time, of notice to the members of the collective, apprising them of their rights to opt in to this action and assert timely claims for unpaid overtime wages;

G. for the equitable tolling of the statute of limitations from the date of filing of this Collective-Action Complaint until the expiration of the deadline for filing consent-to-join forms pursuant to 29 U.S.C. § 216(b);

H. for designation of this action as a class action on behalf of the proposed class;

I. for designation of Harris and Mata as the class's named representatives;

J. for issuance, at the earliest possible time, of notice to the members of the class, apprising them of this action and permitting them to assert timely claims for unpaid agreed-upon wages, including overtime wages;

K. for an award of compensatory damages and equitable relief, including, but not limited to, back pay and liquidated damages;

L. for an appropriate incentive award for Harris and Mata for acting as named plaintiffs, collective representatives, and class representatives, and for pursuing this action on behalf of the collective and the class;

M. for appropriate injunctive relief to ensure that Defendants' unlawful pay practices cease immediately;

N. for reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

O. for pre- and post-judgment interest; and

P. any other relief to which they may be entitled.

 Respectfully submitted,

**/s/ Matthew T. Lockaby**
Matthew T. Lockaby
Tamara J. Patterson
Lockaby PLLC
1795 Alysheba Way, Suite 4207
Lexington, Kentucky 40509
Tele: 859.263.7884
Fax: 844.270.3044
Email: mlockaby@lockabylaw.com
   tpatterson@lockabylaw.com

*Counsel for Plaintiffs,*
*Tyler Harris and Pablo Mata*